IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| INTERNATIONAL CHEMICAL ) <br> WORKERS UNION COUNCIL, ) <br> LOCAL 278C, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NORTH AMERICAN SALT COMPANY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 13-2465 |

## MEMORANDUM AND ORDER

This is an action filed by plaintiff International Chemical Workers Union Council, Local 278C, against defendant North American Salt Company, requesting confirmation and enforcement of a labor arbitration award and seeking remand to the arbitrator for resolution of disputed facts and remaining remedial issues. (Doc. 1.) Both defendant and plaintiff have filed motions for summary judgment (Docs. 13 and 14, respectively). For the reasons stated below, the court denies the summary judgment motions and remands for further clarification.

**I.  Facts**

The facts giving rise to the arbitrator's award are as follows. Defendant produces food grade salt for food processors, table salt for sale to consumers, and salt blocks for livestock consumption. Patrick Guldner was employed by defendant and, beginning in October 2007, he became a laborer, where he spent most of his time painting at defendant's Lyon, Kansas facility. In December 2009, Guldner injured his back while at work and eventually underwent back surgery in October of 2010. After he recovered from the surgery, Guldner was examined by a doctor. The doctor authorized Guldner to return to work without restrictions on December 13, 2010.

After Guldner returned to work, he was assigned to cleaning up eighty-pound bags of salt, during which he testified he re-injured his back. On December 17, 2010, Guldner saw a surgeon of his own choosing, who issued restrictions prohibiting Guldner from lifting (1) any object weighing fifty pounds more than twice per day; (2) objects weighing forty pounds for more than one-third of the day; and (3) objects weighing thirty pounds for more than two-thirds of the day. After being placed on these new lifting restrictions, Guldner's plant manager placed Guldner on a leave of absence and encouraged him to apply for workers' compensation benefits. Guldner applied for benefits, which defendant challenged. Guldner's workers' compensation claim was granted by an administrative law judge.

On April 11, 2011, Dr. Paul Stein, Guldner's personal physician, issued permanent restrictions to avoid lifting more than forty pounds occasionally and thirty pounds more often, no continuous lifting, and to avoid repetitive lifting from below knee-height or above chest-height. During the time Guldner was on leave, the plaintiff repeatedly demanded that Guldner be returned back to work as a laborer or painter. Defendant claims that the painter position no longer existed and that Guldner was still incapable of performing all the essential functions of the laborer position. As a result, defendant refused to return Guldner back to work. On December 22, 2011, exactly one year after Guldner was sent home, the defendant terminated Guldner's employment.[1]

Plaintiff challenged Guldner's discharge and, when the grievance was not settled, it was referred to binding arbitration. On August 1, 2012, arbitrator Richard Potter (the "Arbitrator") conducted an evidentiary hearing. On September 20, 2012, the Arbitrator issued an award (the "Award"), stating:

---

[1] The applicable collective bargaining agreement states that an employee "shall be terminated when he . . . is absent because of a work related injury or layoff for more than two (2) months per year of continuous service or one (1) year, whichever is greater."

> The Grievance is granted.  The Grievant is to be allowed to attempt to perform duties of the Laborer position, making reasonable accommodations for the restrictions on the weight he can handle.  The Company may have him examined by a physician of its choice to confirm those restrictions.   His seniority will be restored as though he had not been discharged and he will receive any benefits for which he is eligible because of his restored seniority.   He is to be compensated for the straight time wages he would have received from the date of his termination to the day he is called to report, less earnings from any other jobs or unemployment compensation.

(Doc. 12-2 at 6.)

On October 9, 2012, defendant filed with the Arbitrator a motion for reconsideration.  The Arbitrator did not grant defendant's motion for reconsideration but instead issued a clarification (the "Clarification"), in which he stated in pertinent part:

> At the hearing when the Company introduced the Laborer position description, I inquired as to which examples of tasks listed would require a person to lift up to 80 pounds, a listed physical requirement of the position. Ms. Schmidt (with the assistance of Mr. Burgess) was able to identify only one task that would require lifting that kind of weight – cleaning up 80 pound broken open salt bags.  Since that task wasn't specifically listed, it would be included under the "other tasks as assigned," included in all job descriptions to be performed infrequently, but nonetheless part of the job.  Later there was testimony that 80 pound bags represented only about 5% of the plant's production. Assuming there was a relationship between the containers spilled and number produced, I concluded that lifting this kind of weight was a minor part of an infrequent task performed by a laborer.  I further concluded that while he could participate in cleaning up such spills (such as shoveling and sweeping up product, pushing rolling containers of product, etc.) within the limits of his restrictions, the actual lifting of such weight could be done by the other Laborers.

(Doc. 12-4 at 2.)

> It was my intent, however, that the Company give the Grievant a good-faith opportunity to perform what is essentially a custodial job within the limits of his restrictions.
>
> This may require the Company and Union look at the required tasks to determine how some may be performed differently.  For example, when I toured the plant on an earlier visit, I noticed there were several levels

> where employees work. If to perform some tasks a Laborer is required to carry supplies or custodial equipment weighing more than 40 pounds between levels, he may need to repackage them in smaller amounts or, if not too expensive, the Company might purchase additional equipment to have at different levels. In other cases, a Laborer may normally carry weights when they could be moved on hand trucks or carts or store materials at heights that preclude them bending over to lift it. If the Company and Union are serious in attempting to find reasonable accommodations to reduce the weight a Laborer is required to lift, it may benefit all Laborers.

(Doc. 12-4 at 2–3.)

After the Clarification, defendant sent Guldner to the Hutchinson Clinic for a physical evaluation to confirm his physical restrictions. The Hutchinson Clinic requested a release from Dr. Stein (Guldner's personal physician) for Guldner to lift up to eighty pounds as part of the physical examination and strength test. Dr. Stein would not provide a release to allow Guldner to lift up to eighty pounds and, as a result, the Hutchinson Clinic did not perform a strength test or conduct a complete physical evaluation.

Thereafter, defendant sent Guldner to Dr. Matthew Schlotterback. Plaintiff claims that Dr. Schlotterback did not perform a full, or relevant, physical of Guldner and that he did not exam Guldner's back or have Guldner perform any range of motion actions. Plaintiff argues that Dr. Schlotterback's action, or inactions, were due to his incorrect belief that Guldner would still have to lift up to eighty pounds as a laborer in order to be able to return to work. Defendant claims that Dr. Schlotterback performed an appropriate physical examination and concluded that Mr. Guldner was not capable of performing the essential functions of the laborer position.

On December 3, 2012, defendant informed plaintiff that it could not re-hire Guldner because it could not identify a reasonable accommodation that would allow Guldner to perform all the essential functions of the laborer position. Plaintiff maintains that defendant continues to wrongfully assert that lifting up to eighty pounds is an "essential" part of the laborer position and that defendant has not made

a reasonable accommodation as required.  Plaintiff also claims that defendant did not communicate the appropriate job description to the Hutchinson Clinic or to Dr. Schlotterback, so no fair physical has been, or can be, performed.  Plaintiff further claims that there is more than sufficient painting-related and other work within the laborer classification and within Guldner's weight restrictions to reasonably accommodate Guldner and keep him employed full-time as a laborer without an undue burden on defendant.  Plaintiff has accused defendant of failing to comply with the Award and filed this lawsuit seeking an order confirming the award and remanding the case to the Arbitrator for resolution of disputes over compliance.

Plaintiff argues that the Company is barred from raising any defenses because defendant failed to timely bring an action to vacate the Award or Clarification.  The Court agrees to the extent that defendant opposes confirmation of the Award and Clarification.  *See United Food & Commercial Workers Int'l Union, Local No. 7 v. King Soopers, Inc.*, 743 F.3d 1310, 1313 (10th Cir. 2014) (a party "cannot evade the time limit to bring an action to vacate an award by waiting until an enforcement proceeding before it raises its challenge") (citing *Int'l Bhd. of Elec. Workers, Local Union No. 969 v. Babcock & Wilcox*, 826 F.2d 962 (10th Cir. 1987)).

However, given the events that have transpired since the Award and Clarification, specifically with respect to the physical examinations of Guldner by the Hutchinson Clinic and Dr. Schlotterback, the court believes remand to the Arbitrator is appropriate.  *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 44–45 (1987) ("If additional facts were to be found, the arbitrator should find them in the course of any further effort the Company might have made to discharge [the grievant] . . . .").  Here, in the Award, the Arbitrator granted the grievance, ordered the Company to make reasonable accommodations for Guldner's weight restrictions, and stated that the Company "may have [Guldner] examined by a physician of its choice to confirm those restrictions."  (Doc. 12-2.)  At the

time of the Award, the Arbitrator had not made clear whether lifting eighty pounds was a requirement for laborers.  Later, in the Clarification, the Arbitrator clarified that eighty pounds "was a minor part of an infrequent task performed by a laborer" and concluded that the actual lifting of such weight could be done by the other laborers.  Yet, neither the Hutchinson Clinic nor Dr. Schlotterback would complete Guldner's physical examination because Guldner's own physician would not release him to lift eighty pounds.  It seems that, under the Award and Clarification, it is not clear what restrictions the Hutchinson Clinic and Dr. Schlotterback were to confirm—Dr. Stein's forty-pound/thirty-pound/continuous lifting restrictions or an eighty-pound restriction.  Moreover, it is unclear from the record exactly what information about the laborer requirements Dr. Schlotterback had when he determined that Guldner could not perform those job functions.  Without this factual information, the court cannot determine whether Dr. Schlotterback performed a physical examination of Guldner that was actually relevant to determining whether Guldner could perform the duties of a laborer as defined by the Arbitrator.

The court also notes that the Arbitrator stated that compliance with his award "may require the Company and Union look at the required tasks to determine how some may be performed differently." (Doc. 12-4 at 2–3.)  Plaintiff claims that defendant has not included it (the Union) in this process at all.  The court is unclear to what extent defendant must afford plaintiff an opportunity to be involved in these determinations.

The court finds that remand to the Arbitrator under these circumstances is appropriate.  An order granting or denying plaintiff's request for enforcement would require the court presuppose what restrictions the Arbitrator intended the Company could confirm upon a physical examination of Guldner.  The court should not attempt to guess the intent of the arbitrator.  *Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 333 (3d Cir. 1999) (holding that

remand avoids misinterpretation of the award and is more likely to give the parties the award for which they bargained) (citing *New York Bus Tours, Inc. v. Kheel*, 864 F.2d 9, 12 (2d Cir. 1988) ("When an arbitration award provides no clear instruction as to how a court asked to enforce the award should proceed, the court should remand to the arbitrator for guidance.")).

The court therefore remands the case back to the Arbitrator for clarification of the remedy and resolution of any remaining factual disputes related to the reasonable accommodation issue.[2]  In doing so, the Arbitrator should consider the reasons why the Company-approved physician refused to perform a complete physical examination and on what basis the determination was made that Guldner could not perform the essential job functions of a laborer.  The Arbitrator may also consider whether defendant must afford plaintiff an opportunity to be involved in required-task determinations and whether these facts affect the remedy or require a revision to the remedy.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 13) and Plaintiff's Motion for Summary Judgment (Doc. 14) are denied.  The case is remanded to Arbitrator Richard Potter for factual determinations and clarifications as set forth in this opinion.

Dated this 18th day of December, 2014, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

---

[2] Because there are material factual disputes, summary judgment is not appropriate.